Our final case this morning is Drinkwater v. Larson. Mr. Henderson May it please the Court, and good afternoon as the first attorney who gets to say that. I'm Brady Henderson on behalf of Appellant Dale Drinkwater, and I'm fortunate to be here today on a much narrower and more straightforward set of issues than the District Court initially confronted in this case. Instead of a multiplicity of defendants and claims, we are essentially here to answer a very specific question, and that question concerns the deliberate indifference standard to prove a violation of the Eighth Amendment for denial of medical treatment. When Mr. Drinkwater was in custody under the Wisconsin Department of Corrections, there are two defendants, or rather, appellees here, Drs. Larson and Burnett, both of whom made decisions that resulted in a denial of a surgical consult to Mr. Drinkwater for a severe hip problem that had been exacerbated by injury. Mr. Drinkwater has had significant hip issues going far back as the 1990s, requiring substantial reconstruction, something that is complex and difficult to deal with. What we are here talking about today is not just the general treatment that he received for that, but specifically how these doctors reacted after it was exacerbated by an injury suffered in a fall on May 24th of 2010. First, Dr. Burnett. Dr. Burnett, or rather, we have concern with Dr. Burnett's decision because ultimately he made a decision to disallow a referral that had been recommended by one physician with DOC, one other treating physician at the hospital in which Mr. Drinkwater had been treated following his fall. Both of these individuals believed, both of these doctors rather, believed that Mr. Drinkwater required a surgical consult with an adult reconstruction expert. And as it's noted in the record, this is something that is essentially a tertiary or quaternary level referral. This is not any old doctor. However, there is a dispute over whether or not Mr. Drinkwater had refused to see physicians within the University of Wisconsin system. And it just so happens that the Wisconsin Department of Corrections has a contract that essentially grants UW exclusive rights over surgical consults on its inmates, or rather, at least a right of first refusal, to use the contractual term. Dr. Burnett was confronted with two doctors saying, Mr. Drinkwater needs surgical consultation. However, a previous visit with a Dr. Ilgen, or Ilgen, at UW had produced a lack of confidence in Mr. Drinkwater as to his ability to offer effective treatment. Is there any evidence that Dr. Burnett disagreed with Dr. Ilgen's medical opinions? There's not evidence either way. And that's really the problem, Your Honor. In fact, when I was... But the burden of proof is on you to establish deliberate indifference. You have a specialist here who has seen your client who has said he doesn't need surgery now. The client disagrees with it. But how could we hold another doctor deliberately indifferent when there's no evidence that he disagreed with or thought that Dr. Ilgen was committing malpractice or otherwise? Well, it's important to note, Your Honor, we're talking about two different things in time. So we have an existing hip condition that's existed since the 1990s, deterioration of artificial replacement. Ilgen's opinion was issued before the injury on May 24th, which exacerbated the condition. In other words, it changed things. And both Drs. Grossman, who was at... Dr. Grossman was at Waupun Memorial Hospital, and later Dr. Larson with the Department of Corrections, both looked at that and essentially said we need a surgical consult now. Now we've got new problems. This particular injury resulted in essentially a three-day hospitalization, and it changed things. And so to the extent that we have Burnett now post-talk saying I can rely on Ilgen, we're relying on an opinion that does not address anything post-injury. The only thing that's close to that, and I think it's pertinent to your question, Your Honor, is that in Larson's request for these services, and this is I think on roughly page seven or so of the district court decision, one of the things Larson notes after saying Dr. Grossman sees long-term problem here, we need this, can we get this person seen at Mayo or Fraydert, which would be outside our normal procedure, he says UW has looked at the x-rays, doesn't see a substantial change requiring urgent intervention. I believe it's his exact words. So the only thing that Burnett could have relied on at that point would have been a hearsay statement saying that somebody at UW has looked at this and doesn't see the need for urgent intervention. However, urgent intervention does not equal surgery. For instance, this distinction actually happens later in the record, I believe on page 15, when eventually a reconstruction surgery is done in 2015, and it is under Department of Corrections. It happens at UW with who turns out to be the appropriate physician, a Dr. Heiner. And Dr. Heiner's request had in fact noted yes, he needs surgery, it's not urgent, but it should happen soon. So that distinction between urgent and necessary already exists in the record. And here if we are to essentially suggest that Burnett can rely on that as a contrary view to Dr. Grossman and Larson, we're making a rather stretched inference that he would not under, or rather that he would understand a lack of urgency to mean that no surgical consult is necessary at that time. How does any of this constitute deliberate indifference? In other words, criminal recklessness to known or obvious substantial risk of harm, as opposed to, at best, negligence, but the district court didn't even think it met the standard for negligence. Indeed. So, Your Honor, of course there's a subjective and objective component to the deliberate indifference standards. It's long known in the circuit. Objectively, there is no dispute. We know there's a serious medical condition. Subjective component, of course, is at the point of your question ultimately. So here, I'm not examining the totality of treatment. I'm not saying drink water was ignored. We're looking at a specific decision by Dr. Burnett that we know was not made via medical judgment. And the reason that's important is because Dr. Burnett is in a position where he is faced with a request based on medical judgment that says this treatment is needed. A proper surgical consultation is found. Dr. Burnett simply made the decision not to send him to Mayo or some other non-UW facility. He did, Your Honor. He didn't deny further treatment. He just said this doesn't satisfy our standards for sending somebody to a specialty clinic like Mayo or some other non-UW facility in as much as the University of Wisconsin Medical Center is a world-class facility. And prisoners are quite fortunate to get treatment there. Yes. And ultimately, a successful treatment eventually happened there five years later. No, the problem is not that he gets to make that decision. The problem is, per the record here, he makes it through entirely non-medical means. He says this is what the contract says. That's what we're doing. There's nothing suggesting that he actually— The provision or denial of medical services is just the place where he's going to go for it. And that's governed by administrative standards, essentially, that have presumably a medical component to them as well. But it wasn't a denial of care. It was a, you can't go to Mayo. If you want care, you've got to get it at UW. I think I see the Court's point in that, in and of itself, it was not intrinsically a denial. In that, in theory, following his decision, Mr. Drinkwater could still go to UW. Right, because then the case went back to Dr. Larson. Burnett's only responsible for referrals outside the UW system, as I understand the hierarchy here. Indeed. And that's my understanding of the hierarchy as well, Judge. The problem here is that we had two doctors saying, this is what's needed. He needs to go to Fraynert or Mayo. Burnett says no. And I very much understand the Court's point that Burnett is not necessarily saying no with the explicit provision that no treatment happened. We cannot go far enough to say he would have had that exact state of mind. But the other doctors are not saying he has to go to Mayo or Fraynert for medical reasons. They're saying he's refusing to go to the University of Wisconsin Hospital. So the pivot point here, the pressure point of this case, is his refusal to go back to UW. And it's important to note, Your Honor, that refusal remains in dispute. It's a very important thing to note. What is not in dispute is that back before the injury, Mr. Drinkwater refused to transport to see Dr. Algen on a follow-up appointment. Before the injury, when Algen, in the previous appointment, had effectively said, I'm not going to do surgery right now. In other words, I can't fix what's wrong. I can't provide you what you're wanting or needing. And at that point, he refused the transport. Something that I think it's all too easy for us to look at as capricious, but when you think about an in-custody transport of someone in a difficult physical condition is a big deal. There is a very much dispute over what that really represented later. And Larson's decision ultimately is what, combined with Burnett, denied the care. Because we had outside of UW, inside UW. Burnett takes away one, Larson takes away the other, with knowledge of what the other was doing. That's the problem. I see my time, I believe, is about to end, but I'm certainly happy to entertain other questions. All right, thank you. Ms. Vandermeuse. Good afternoon, and may it please the Court. I'm Assistant Attorney General Jennifer Vandermeuse, and I represent the appellees in this case. We ask this Court to affirm the District Court because Mr. Drinkwater has failed to establish that Drs. Burnett and Larson were deliberately indifferent to his medical needs. To survive summary judgment, Mr. Drinkwater had to establish a dispute of material fact that these two doctors knew of a substantial risk of harm to Mr. Drinkwater and that they acted or failed to act in disregard of that risk. There is no evidence in this summary judgment record that either doctor was aware of a risk of harm when they made the denials at issue in this appeal. Because the undisputed evidence shows that at the time, the UW physicians were not recommending surgery or urgent intervention for his hip condition. So turning to Dr. Burnett, no reasonable jury could conclude that by denying Dr. Larson's request for Mr. Drinkwater to be referred to a non-UW physician, that Dr. Burnett perceived a risk of harm and disregarded that risk. The written request that Dr. Burnett reviewed, which is found on docket 58-1, page 114, did not give Dr. Burnett any reason to doubt the competence of the UW physicians. The request indicates that UW orthopedics did not think that immediate surgery or intervention was warranted, but Mr. Drinkwater wanted a second opinion outside the UW system. According to the note, Dr. Grossman did not say that a second opinion was necessary outside the UW system. And as Mr. Drinkwater conceded in his briefing, an inmate is not entitled to demand specific care and is not even entitled to the best care possible. He is entitled only to reasonable measures to meet a substantial risk of serious harm. Now by the information that Dr. Burnett had, there is no evidence that he perceived a risk of harm in denying the request to be referred outside UW. And it was reasonable for him to deny the request based on established Department of Corrections policy that inmates see UW physicians for their care. Turning to Dr. Larson, no reasonable jury could conclude that by denying Mr. Drinkwater's request to change his medical records, in essence by checking a box to say that his medical records were complete, that Dr. Larson perceived a risk that Mr. Drinkwater would be barred from seeing UW doctors for necessary medical care. The record is clear that at the time of this denial, it was Dr. Larson's understanding that UW orthopedics did not think that immediate surgery or urgent intervention was necessary, and that's again based on docket 58-1, page 114, and the medical records leading up to that. Therefore, granting his request to alter his medical records would not have given him the second conclusion that he desired, in other words that he should have his surgery right away. And further, in the three times that Dr. Larson saw Mr. Drinkwater following this denial, there is no evidence that he observed a change in condition warranting immediate intervention, and nor is there evidence of a specific request from Mr. Drinkwater that he see a UW physician. He was released in September of 2011, and at that time he did see a medical physician of his choice who recommended the surgery, but he didn't even get it when he was out because he wasn't able to quit smoking in time. He was in and out of custody for the next several years, and he eventually did receive the needed treatment from the UW physicians. So the totality of this record shows that at all times Dr. Larson gave Mr. Drinkwater reasonable care. Dr. Larson tried to accommodate his request to see a doctor of his choice, but that request was denied due to circumstances outside of Dr. Larson's control. Now just to address a couple of specific points that the appellant raised, we disagree that the record shows that the physicians thought that an outside referral was required. The medical evidence simply doesn't establish that. Dr. Grossman was not an orthopedic surgeon, but he did note that these conditions were complex, and he was going to follow up with UW to see what options were available. But in the meantime, a pain regimen was warranted. This is on docket 58-1, pages, I believe it's 110 through 11. This is the emergency room physician? So the emergency room physician was Dr. Kahn. Okay. So Dr. Kahn, and I just want to put the emergency room visit in context. He fell while he was in the shower May 24, 2010. He was transferred to Waupon Memorial Hospital promptly, where he was diagnosed with a hip contusion, which means a bruise. And the doctors there did not think that it was necessary to immediately transfer him to UW Hospital. They didn't think his condition was serious enough to warrant that. Did they even note that he refused to go there? Dr. Kahn made a note that he thought that it would be worth following up with UW after this incident, but that immediate transfer was not necessary, and further noted that Mr. Drinkwater was refusing to go. So all of this just shows this does not rise to deliberate indifference. The record is clear that the doctors acted appropriately where necessary. They made medically driven decisions. And for all of these reasons, we would ask that the district court decision be affirmed. And unless there are further questions, I would cede the rest of my time. Thank you. Thank you. Mr. Henderson, your time has expired, so we'll take the case under advisement with thanks to both counsel. And that concludes the calendar for today. The court will be in recess. Thank you. Thank you.